UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| ----------------------------------------------------------------- x | | |
| TREIZY LOPEZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 26-CV-27 (SFR) |
| | : | |
| DEPARTMENT OF CORRECTION, *et al*, | : | |
| | : | |
| Defendants. | : | |
| ----------------------------------------------------------------- x | | |

## INITIAL REVIEW ORDER AND RULING ON MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Treizy Lopez, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se*[2] under 42 U.S.C. § 1983 against eight defendants: DOC, Dr. Maher Kasabji, Dr. Frankie Cuevas, Meghan Faust, Dr. Lisa Cruz, Jennifer Cruz, Nurse James, and Jennifer Sanchez. Lopez brings claims under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), alleging that Defendants failed to provide him with adequate dental and medical care. Lopez sues Defendants in their official and individual capacities, and he

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function shows that Lopez was sentenced in 2018 and is imprisoned at Cheshire Correctional Institution.

[2] It appears that several of Lopez's filings in this case may have been prepared by a "jailhouse lawyer." *See* ECF No. 23 (describing purported agreement between Treizy Lopez and Victor Lamond Jordan, Sr. for assistance drafting initial legal filings). I caution Lopez that the submission of documents on his behalf by anyone other than a licensed attorney may constitute the unauthorized practice of law under Conn. Gen. Stat. § 51-88. *See generally*, *Statewide Grievance Comm. v. Patton*, 683 A.2d 1359, 1361 (1996) (holding that the "preparation of legal documents is commonly understood to be the practice of law").

seeks damages, injunctive relief, and declaratory relief. Lopez also moves for a preliminary injunction requiring Defendants to provide immediate treatment for his dental needs.

For the reasons explained below, I conclude that Lopez may proceed to service on his Eighth Amendment claim for damages, but I deny Lopez's motion for a preliminary injunction.

## I.   BACKGROUND

I accept as true the following well-pleaded facts in the Complaint, ECF No. 1.

Lopez has "major dental problems." Compl. ¶¶ 1-2.[3] For the past seven years, Lopez has been unable to eat without experiencing pain from tooth sensitivity, infections, bleeding gums, and abscesses. *Id.* ¶ 4. The Complaint describes difficulty receiving adequate treatment at several different DOC facilities.

### A.   Northern

In April 2019, when Lopez was at Northern Correctional Institution ("Northern"), he began seeking treatment for his dental conditions. *See id.* ¶ 5. Lopez filed a grievance that month regarding his dental conditions and treatment. *Id.* ¶ 6. Lopez also filed an informal request with the medical department the same month regarding tooth sensitivity and "extreme pain." *Id.* ¶ 7. The dental department responded that Lopez was on a list to be seen. *Id.* Brett, a nurse, documented Lopez's bleeding gums and sensitive teeth in late April 2019. *Id.* ¶ 8. Soon afterwards, Dr. Deflorio, a dentist, evaluated Lopez's teeth. *Id.* "Cleaning was refused" because of Lopez's sensitive teeth. *Id.*

In October 2019, Lopez filed a grievance regarding chronic headaches, back pain, loss of hair, scalp pain, irritated skin, and stomach pain. *Id.* ¶ 9. Medical staff failed to treat these

---

[3] Citations to numbered paragraphs refer to the paragraphs in the "Statement of Facts" unless otherwise noted.

conditions or send Lopez to an outside specialist. *Id.* ¶ 10. Dr. Kasabji,[4] a dentist, saw Lopez in November 2019. *Id.* ¶ 11. Dr. Kasabji noted swelling and pain in "Tooth # 3." *Id.* Lopez consented to Dr. Kasabji extracting this tooth. *Id.* Lopez was scheduled to have other teeth "restored" at a future appointment. *Id.*

### B.    Corrigan and Garner

On January 6, 2020, Lopez submitted an informal request concerning dental care at Corrigan. *Id.* ¶ 13. Three days after he submitted his informal request at Corrigan, Lopez was transferred to Garner Correctional Institution ("Garner"). *See id.* ¶ 12. At Garner, Lopez saw Dr. Lichtenstein, a dentist, in mid-January 2020. *Id*. Dr. Lichtenstein required Lopez to sign a COVID-19 questionnaire before receiving treatment, but Lopez refused to sign it because he "did not believe it was legal." *Id.*

On January 12, 2020, Lopez filed a grievance regarding "all of his medical conditions and disabilities," the pain he had been experiencing, and the bills he had received for treatment. *Id.* ¶ 15. The grievance was rejected because Lopez failed to first file an informal request. *See id.* ¶ 16. Six days after Lopez saw Dr. Lichtenstein, Nurse Frenchette wrote Lopez to tell him that medical staff "did not have [any] control over what other facilities did or did not do." *Id.* ¶ 14. Further, the medical staff was "short staffed," and Lopez's access to medical and dental services was limited because he was housed in the Security Risk Group ("SRG") unit. *Id.*

---

[4] Lopez refers to "Dr. Kasabi" in the body of his complaint, but he lists "Dr. Kasabli" in the caption of his complaint. *See* Compl. 1. But this provider's name appears within the medical records as Maher Kasabji DDS. R. 112, ECF No. 30. I therefore refer to this provider as Dr. Kasabji.

### C.      MacDougall

Lopez later transferred to MacDougall. *See id.* ¶ 17. In May 2022, Lopez submitted an informal request to the dental department regarding his need for dental care. *Id.* Dr. Cuevas, a dentist, responded to the request. *Id.* ¶ 18. Dr. Cuevas noted that Lopez had refused treatment in November 2020 and put Lopez on a "9 to 12 month waiting list for teeth cleaning and fillings." *Id.* ¶ 20. Approximately five months later, in October 2022, Lopez submitted an informal request to the dental department regarding delays in his dental care and treatment. *Id.* ¶ 18. Lopez indicated in the request that the last time he received dental treatment was in November 2019, when his tooth was extracted, and that there was a "9 to 12 month" waiting list to receive dental treatment. *Id.* ¶¶ 19-20.

Meghan Faust, a dental assistant, responded to the informal request the following day. *Id.* ¶ 21. Faust noted that Lopez had refused treatment in November 2020 but had been placed back on the waiting list for fillings and teeth cleaning in May 2022. *Id.* Faust told Lopez that the dental department "would get to him as soon as they get to his name on the list." *Id.* On October 31, 2022, Lopez filed a health services grievance against Dr. Cuevas and Faust, alleging that Dr. Cuevas and Faust lied about Lopez refusing treatment. *Id.* ¶ 22. Lopez received no response to the grievance. *Id.* Lopez appealed his grievance against Dr. Cuevas and Faust, but he never received any responses to his appeals. *Id.* ¶¶ 24-25.

Lopez submitted an informal request to the medical and dental departments in April 2023. *Id.* ¶ 26. Lopez complained of pain in his lower right jaw that was so severe that he could not eat. *Id.* On April 23, 2023, Lopez filed another informal request to the medical department complaining of a lack of treatment. *Id.* ¶ 27. Faust responded that Lopez was seen on April 26, 2023. *Id.* On May 2, 2023, Lopez submitted an informal request to the medical department

seeking blood work because Lopez believed that he had an abscess in his mouth from lack of dental care. *Id.* ¶ 28. An unknown nurse responded on May 4, 2023, indicating that Lopez had been placed on the sick call list. *Id.*

On May 3, 2023, Lopez submitted an informal request seeking blood work and described pain he was experiencing from his dental problems. *Id.* ¶ 29. James, a nurse, responded the following day, indicating that James sent a message to Lopez's provider. *Id.* On May 18, 2023, Lopez submitted an informal request to Dr. Cruz, a supervising dentist at MacDougall, regarding a lack of dental care, the current state of Lopez's dental conditions, and Dr. Cuevas's tooth extraction. *Id.* ¶ 30.

On May 18, 2023, Lopez also submitted a health services remedy regarding his lack of dental care, the condition of his teeth, and the lack of response to his requests for care. *Id.* ¶ 33. Lopez also wrote to Regional Chief Operating Officer ("RCOO") Jennifer Cruz regarding feeling dizzy and experiencing tingling in his lower back, leg, and arms. *Id.* ¶ 32. Lopez asked to be seen by an "independent/different" dentist because he did not trust Dr. Cuevas. *Id.* RCOO Cruz sent the request to Dr. Cruz on May 26, 2023. *Id.* Lopez was seen by an unnamed provider on June 16, 2023. *Id.* When Lopez did not receive responses to his informal requests, he filed a grievance on July 3, 2023. *Id.* ¶ 34. Two days after filing his grievance, Lopez filed an informal request with the medical department regarding abdominal pain after being unable to eat and chew his food. *Id.* ¶ 35. James placed Lopez on the sick call list. *Id.*

On July 20, 2023, Lopez submitted another informal request to the medical department about his abdominal pain and lack of treatment. *Id.* ¶ 36. James responded the same day, indicating that Lopez was on the sick call list and that James had sent a message to the provider and James's supervisor. *Id.* On July 26, 2023, Lopez filed an informal request with the medical

department complaining again of abdominal pain. *Id.* ¶ 39. On August 12, 2023, James responded to the informal request by indicating that James sent a message to Lopez's provider. *Id.* Lopez filed a similar informal request on July 31, 2023, and on August 8, 2023, James responded that he had sent a message to Lopez's provider and that Lopez had been placed on the sick call list. *Id.* ¶ 40.

On September 26, 2023, Lopez received a response to the letter he sent to RCOO Cruz. *Id.* ¶ 37. RCOO Cruz responded that Lopez had been seen by a dentist and that "the matter ha[d] been resolved." *Id.*

### D.    Corrigan

On August 14, 2024, Lopez submitted another informal request to the medical department, which stated that Lopez's attorney had sent a notice to medical staff threatening a lawsuit. *Id.* ¶ 41. James responded to this informal request with a "routine response." *Id.* Lopez appealed the health services remedy he had filed, but he received no response. *Id.* ¶ 42.

By late August 2024 Lopez was at Corrigan. *Id.* ¶ 43. On August 23, 2024, Lopez submitted an informal request to the medical department regarding X-rays and his mental health. *See id.* ¶ 43. On August 28, 2024, Lopez submitted an informal request to Regional Chief Operating Officer Jennifer Sanchez about the abdominal pains Lopez had been experiencing for the past year and the lack of treatment he had received. *Id.* ¶ 44. Sanchez responded that she had seen no requests submitted by Lopez since October 2023. *Id.* ¶ 45.

On September 4, 2024, Lopez submitted another informal request to Sanchez about the lack of care he was receiving. *Id.* ¶ 46. Sanchez responded by referring to her earlier response. *Id.* On September 14, 2024, Lopez submitted an informal request to the dental department regarding Lopez's removal from the SRG unit and subsequent placement in the general

population. *Id.* ¶ 47. Lopez asked to be seen "promptly" because he had not received care for so long. *Id.* On September 17, 2024, Frenchette responded by indicating that this was the first request the department had received from Lopez and that Lopez would be placed on a list to be seen. *Id.* ¶ 48.

On September 16, 2024, Lopez filed an informal request asserting that DOC was not meeting his medical and mental health needs. *Id.* ¶ 49. Lopez received no response. *Id.* On September 14, 2024, Lopez received emergency medical care for "removal of a foreign object from his stomach digestive tract." *Id.* ¶ 52. Lopez believed the object became lodged there because of his inability to chew. *Id.*

On October 16, 2024, Lopez's health services remedy was returned unanswered because the dates were not completed correctly. *Id.* ¶¶ 50-51. Lopez says that the form was completed correctly.

The Complaint does not contain any specific allegations concerning interactions with medical providers in 2025. *See id.* But it closes by stating that, as of December 28, 2025, Lopez was "still suffering from the same medical conditions re: his teeth, gums, and other physical ailments, as well as the decomposing of his overall health, physical and mental health. And the medical / dental departments are still inadequate and deliberately indifferent." *Id.* ¶ 52.

## II.    <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which an incarcerated plaintiff seeks redress from a governmental entity or officer and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint

must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and internal quotation marks omitted).

## III.    **DISCUSSION**

Lopez seeks damages, declaratory relief, and injunctive relief under the Eighth Amendment and the Americans with Disabilities Act and the Rehabilitation Act. As I explain, he may proceed for damages on his claims under the Eighth Amendment. All other claims are dismissed without prejudice and with leave to amend.

### A.    **Eighth Amendment Claims for Damages**

Lopez asserts claims against seven individuals: Dr. Maher Kasabji, Dr. Frankie Cuevas, Meghan Faust, Dr. Lisa Cruz, Jennifer Cruz, Nurse James, and Jennifer Sanchez.[5] Compl. 3-

---

[5] The caption of the complaint lists DOC as a defendant. *See* Compl. 1. As I explain below, I will permit Lopez to proceed to service on his Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983. But I will dismiss DOC from this action because the DOC is a state agency and is not a "person" subject to suit under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding state agencies cannot be sued under section 1983).

4. I consider whether the Complaint adequately states a claim under the Eighth Amendment against any of these individuals. *See id.* at 6-7.

The Supreme Court has held that deliberate indifference by prison officials to an incarcerated person's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to an Eighth Amendment claim for deliberate indifference. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). I conclude that the Complaint adequately satisfies the objective prong, but satisfies the subjective prong only as to certain defendants.

### 1.    Objective Prong

To establish the objective component of an Eighth Amendment deliberate indifference claim, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This objective showing in turn requires a court to make two inquiries. *See Salahuddin*, 467 F.3d at 279. First, I must determine whether the plaintiff was "actually deprived of adequate medical care." *Id.* A "prison official's duty is only to provide reasonable care," so "prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 279-80 (citation and internal quotation marks omitted; alteration adopted). Second, I must determine "whether the inadequacy in medical care is sufficiently serious," which requires examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. This will differ based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 184-86 (2d Cir. 2003). This inquiry is "necessarily contextual,"

9

"fact-specific," and "must be tailored to the specific circumstances of each case." *Id.* at 185 (brackets and internal quotation marks omitted).

Liberally construed, the Complaint alleges that Lopez received no medical or dental care. In this circumstance, "[t]here is no need to distinguish between a prisoner's underlying serious medical condition and the circumstances of his serious medical need." *Smith*, 316 F.3d at 185-86 (internal quotation marks omitted). I therefore proceed to consider the harm caused by this failure to provide treatment. According to the Complaint, Lopez experienced infections, bleeding gums, abscesses, and jaw pain so severe that he could not eat. *See, e.g.*, Compl. ¶ 4 (describing "sensitivity and infections, bleeding gums, and abscesses, [which] have persisted for at least 7 years"). Courts have held that similar conditions satisfy the objective prong. *See, e.g.*, *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (holding that prisoner who experienced severe tooth pain satisfied objective prong); *Polk v. Fisher*, No. 3:23-CV-728 (SFR), 2025 WL 969665, at *11 (D. Conn. Mar. 31, 2025) (same).

### 2.    Subjective Prong

In analyzing the subjective prong, I will also consider whether each of the defendants named in the Complaint was personally involved in the alleged constitutional violations. "Personal involvement may be shown by direct participation, which requires in this context intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks and citation omitted).

To satisfy the subjective component of the Eighth Amendment's deliberate indifference standard, a defendant must have been aware of a substantial risk that the incarcerated individual would suffer serious harm because of his or her actions or inactions. *See Salahuddin*

10

467 F.3d at 280. Deliberate indifference is more than mere negligence—it is equivalent to "criminal recklessness," where an individual "disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In general, medical malpractice does not suffice for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280.

"The state of the defendant's knowledge is normally a question of fact to be determined after trial." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). "Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Hudak v. Miller*, 28 F. Supp. 2d 827, 831 (S.D.N.Y. 1998) (Sotomayor, J.) ("[I]f the evidence shows that the risk of serious medical problems was so obvious that a reasonable factfinder could infer actual knowledge of them on [defendant's] part, this Court must deny summary

11

judgment."); *Bardo v. Wright*, No. 3:17-cv-1430 (JBA), 2019 WL 5864820, at *7 (D. Conn. Nov. 8, 2019).

Throughout his complaint, Lopez describes filing informal requests or grievances with the "medical" or "dental" departments in an attempt to obtain dental or medical care. *See, e.g.*, Compl. ¶¶ 7, 13, 17, 19, 26, 27, 28, 29, 35, 36, 39, 41, 43, 47. Courts have held that "[t]he fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official." *Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014). "Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Green v. Riffo*, No. 3:18CV00960 (SALM), 2022 WL 94224, at *4 (D. Conn. Jan. 10, 2022) (quoting *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014)); *accord Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (affirming dismissal of claims against defendants where "[t]he only allegation pertaining to these defendants is that [the plaintiff] filed complaints with [the defendants'] offices").

The Complaint alleges that five of the defendants—Dr. Cuevas, Faust, James, Sanchez, and RCOO Cruz—responded to Lopez's informal requests or grievances. *See* Compl. ¶ 18 (Dr. Cuevas); *id.* ¶¶ 21, 27 (Faust); *id.* ¶¶ 29, 36, 39, 40, 41 (James); *id.* ¶¶ 45, 46 (Sanchez); *id.* ¶ 37 (RCOO Cruz). Their direct responses suffice to demonstrate their personal involvement. *See Green*, 2022 WL 94224, at *4. Lopez alleges that he repeatedly complained of severe pain and a delay in treatment. For purposes of initial review, I will permit Lopez to proceed in his deliberate indifference claims against these Defendants as the nature of their responses support the inference that these individuals knew that their inactions would cause a substantial risk of harm to Lopez in light of his already deteriorating health. *See Salahuddin*, 467 F.3d at 279-80.

12

As to Dr. Cruz, the Complaint alleges that Lopez alerted her on May 18, 2023 of his longstanding difficulties accessing dental care and his extreme suffering. Compl. ¶ 30. When Lopez sent another request to RCOO Cruz on May 26, 2023, the request was forwarded to Dr. Cruz. Lopez was eventually seen by a provider on June 16, 2023. Compl. ¶ 32. For purposes of initial review, these allegations support the inference that Dr. Cruz may also have been deliberately indifferent to Lopez's needs given her responsibilities at MacDougall, her notice of Lopez's suffering, and the delay in him accessing urgently needed care.

But the same cannot be said of Dr. Kasabji. The Complaint's only allegation as to Dr. Kasabji is that he extracted a tooth with Lopez's consent in January 2019. Compl. ¶ 11. The Complaint does not allege that Dr. Kasabji acted improperly or otherwise failed to act in response to Plaintiff's concerns. Accordingly, Lopez's Eighth Amendment claim against Dr. Kasabji must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). Lopez may proceed on an Eighth Amendment claim for damages against Cuevas, Faust, James, Sanchez, Dr. Cruz, and RCOO Cruz.

### B.   ADA and RA Claims

Lopez also asserts claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Compl. 6-7.

The standards under Title II of the ADA and § 504 of the RA "are generally the same," and both apply to state prisons and prisoners. *Wright v. New York State Dep't of Corr.*, 831

13

F.3d 64, 72 (2d Cir. 2016).[6] To establish a prima facie violation under Title II of the ADA or the RA, Lopez must show that: (1) he is a qualified individual with a disability, (2) Defendants are subject to the ADA and RA, and (3) Lopez was denied the opportunity "to participate in or benefit from [Defendants'] services, programs, or activities or [Defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009) (citation and internal quotation marks omitted); *accord Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021).

I assume that Lopez is disabled by virtue of his dental condition and that the ADA applies to state prisons. But I conclude that the third prong is not satisfied. Here, the Complaint appears to allege that Defendants failed to provide adequate medical care to treat Lopez's dental needs. But the Second Circuit has held that failure to "provide custodial medical services" in a "timely and adequate manner" does not "by itself, constitute[] a failure to make a reasonable accommodation by reason of an individual's disability under the ADA." *Tardif*, 991 F.3d at 404 (internal quotation marks omitted). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate

---

[6] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

14

was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010); *Tardif*, 991 F.3d at 405 ("[H]er claim relates solely to whether she received adequate medical treatment in police custody for her disability, and such a claim is not cognizable under the ADA."); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (holding that there is no ADA claim where "plaintiff is in essence challenging the adequacy of his [mental health] services, not illegal disability discrimination").

The Complaint does not allege that Defendants deprived Lopez of a "service" other than medical treatment for the condition causing his disability. Under these circumstances, I conclude that the Second Circuit's holdings preclude relief for an ADA or RA claim. I therefore dismiss Lopez's ADA and RA claim for failure to state a claim.

### C.    Declaratory Relief

In addition to damages, Lopez also seeks declaratory relief. *See* Compl. 22. "[I]f Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, I will dismiss Lopez's claim for declaratory relief.

### D.    Official Capacity Claims for Damages

For purposes of initial review, I conclude that Lopez may proceed to service on his Eighth Amendment claim for deliberate medical indifference against Dr. Cuevas, Faust, James, Sanchez, Dr. Cruz, and RCOO Cruz in their individual capacities. Because these individuals are all state employees, the doctrine of state sovereign immunity provides that Lopez cannot recover damages from them in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that Eleventh Amendment bars damages action "when State

officials are sued for damages in their official capacity."). Lopez's official capacity claims for damages are therefore dismissed without prejudice and without leave to amend.

### E.    Preliminary Injunctive Relief

The Complaint includes a request for "injunctive relief in the form of immediate treatment and care for his emergent condition." Compl. 22. And Lopez has separately moved for an emergency TRO and preliminary injunction. ECF No. 4. Lopez seeks an order from the court directing Defendants "to transport him to UConn or Yale to take care of this emergency dental problem." ECF No. 4, at 14. After holding a virtual status conference with the parties, I ordered Jennifer Cruz to show cause in response to Lopez's motion. ECF No. 13. Cruz filed a response in opposition, ECF No. 29 ("Def.'s Opp."), as well as Lopez's medical records, ECF No. 30 ("R.").[7] And on April 13, 2026, Lopez filed a two-page reply to Defendants' opposition that also attached a recent report from the DOC Ombudsman. Pl.'s Reply, ECF No. 32.

"In the Second Circuit, the same legal standard governs motions for temporary restraining orders and motions for preliminary injunctions." *Lazor v. Univ. of Connecticut*, 560 F. Supp. 3d 674, 677 (D. Conn. 2021). "That familiar standard requires a plaintiff to make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to

---

[7] Courts often hold hearings before resolving a motion for preliminary injunction. But where, as here, "the record before the Court demonstrates no factual dispute to be resolved by an evidentiary hearing, the Court may grant or deny the motion without hearing oral testimony." *Scozzari v. Santiago*, No. 3:19-CV-229 (JAM), 2019 WL 6696091, at *3 n.8 (D. Conn. Dec. 9, 2019).

immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011).

Public records show that Lopez is now held at Cheshire. Defendants contend that Lopez's has not made a threshold showing of irreparable harm. Defs.' Opp. 9. Lopez responds that his "condition has gotten worse, he in severe pain and decomposition, and the Department of Correction has not made any attempts to rectify this matter." Pl.'s Reply 1. I agree that Lopez has not established in the Complaint or through other competent evidence that he faces a risk of irreparable harm related to his medical needs at Cheshire. Although the Complaint supports the inference that Lopez may have experienced deliberate indifference to his medical needs in the past at prior facilities, those prior injuries do not entitle him to seek a preliminary injunction relating to his medical needs at Cheshire. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("[P]ast injuries . . . do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."). Neither the Complaint nor Lopez's medical records show that he requested or otherwise sought treatment for his dental issues since he was transferred to Cheshire. Indeed, his medical records do not detail any interactions with medical providers in the calendar year of 2025. Because Lopez has not made a "clear showing" that he faces a risk of irreparable

harm at Cheshire absent an injunction, I deny without prejudice Lopez's motion for preliminary injunctive relief.

## IV.    <u>CONCLUSION AND ORDERS</u>

For the foregoing reasons, I conclude as follows:

Lopez may pursue damages from Dr. Cuevas, Faust, James, Sanchez, RCOO Cruz, and Dr. Cruz in their individual capacities on Lopez's Eighth Amendment deliberate indifference to medical needs claim. All other claims are dismissed, and all other defendants are terminated.

Lopez has two options as to how to proceed in response to this Initial Review Order:

1.    If Lopez wishes to proceed immediately **only** on the claims set forth above, he may do so without further delay. If Lopez selects this option, he shall file a notice on the docket on or before **September 4, 2026**, informing the court that he elects to proceed with service as to the claims set forth in this paragraph. The court will then begin the effort to serve process on Defendants named above in their individual capacities.

2.    Alternatively, if Lopez wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed to attempt to state a viable claim, he may file an amended complaint on or before September 4, 2026. **An amended complaint, if filed, will completely replace the complaint, and I will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Lopez elects to file an amended complaint, the

18

complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the court receives no response from Lopez on or before **September 4, 2026**, the court will presume that Lopez wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
July 31, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

19
